MRS. MATTIE PEARCE HAYNIE, Appellee, v. MILAN EXCHANGE. INC., Appellant, and Bill Gardner and Mary Lynn Gardner, Appellees.

BILL GARDNER and MARY LYNN GARDNER, Appellees, v. J. FRANK WARMATH, Appellant. —458 S.W.2d 23.

Western Section. April 15, 1970.

Certiorari Denied by Supreme Court September 21, 1970.

38

G. Griffin Boyte, Humboldt, for appellant The Milan Exchange, Inc.

J. Frank Warmath, pro se.

John F. Kizer, Milan, for appellee Mrs. Mattie Pearce Haynie.

Lloyd S. Adams, Jr., Adams, Adams & Albright, Humboldt, for appellees Gardner.

MATHERNE, J. The complainant, Mrs. Mattie Pearce Haynie brought suit in equity to recover of the defendants Bill Gardner and wife Mary Lynn Gardner and The Milan Exchange, Inc., the balance due on a note executed by the defendants as a part of the purchase price of one hundred percent of the common stock of The Milan Exchange, Inc. sold by the complainant to the defendants Gardner, plus reasonable attorney's fee.

The defendants Gardner by answer and cross-bill admit the note sued on but allege they are not liable because J. Frank Warmath, for a valuable consideration, agreed to hold them harmless on the note. These defendants by cross-bill named the original complainant and J. Frank Warmath as defendants and allege cross-defendant War-

math did by written instrument dated March 13, 1967 assume all liability of cross-complainants by reason of the note sued on. These cross-complainants prayed judgment against J. Frank Warmath for any amount which they may be held liable to the original complainant.

The defendant, The Milan Exchange, Inc., filed an answer and cross-bill, naming the original complainant as cross-defendant, wherein it alleged the note executed by The Milan Exchange, Inc., as a co-maker was without consideration to that corporation; the note as executed by the defendant corporation was for the purchase by its co-defendants Gardner of all the outstanding stock of the corporate defendant, and the effect of these co-defendants causing the execution of the note by the corporate defendant as co-maker was for the benefit of the co-defendants and guaranteeing the indebtedness of another, which rendered the transaction ultra vires the defendant corporation. By cross-bill the defendant corporation seeks refund of all amounts paid by it on the note, and the cancellation of the note and a deed of trust and security agreement executed by the defendant corporation to secure the note.

The Trial Judge entered a decree in favor of the original complainant Mrs. Haynie against the original defendants Milan Exchange, Inc., Bill Gardner and Mary Lynn Gardner in the amount of $14,196.14 as principal and interest due as of date of judgment, plus $2,129.42 attorney's fee, or a total judgment of $16,325.56. The Trial Judge sustained the cross-bill of the defendants Garner against the cross-defendant J. Frank Warmath, for the amount of the liability of the defendants Gardner under the decree. The cross-bill of the defendants Gardner as to the original complainant Mrs. Haynie was dis-

missed, and the cross-bill of The Milan Exchange, Inc. was dismissed.

The defendant, The Milan Exchange, Inc., has appealed and assigns three errors: (1) It was error to give judgment against this corporate defendant because there was no consideration to this defendant for its execution of the note sued on; (2) The note executed by this defendant corporation was ultra vires and void because it was executed for the purpose of securing the debt of another, namely the co-defendants Gardner; and, (3) The Court erred in dismissing the cross-bill of this corporate defendant for the reason as stated in (1) and (2 )above.

The cross-defendant J. Frank Warmath has appealed and by four Assignments of Error presents the issue the Trial Judge erred in sustaining a demurrer to his plea in abatement to the cross-bill; in overruling his motion to dismiss the cross-bill; in overruling his demurrer to the cross-bill; and in entering judgment against him because no liability has been determined as owing by the defendants Gardner and therefore the procedure and judgment against him is in error because there is no third party practice in the State of Tennessee.

This cause was heard by the Trial Court on oral testimony, without a jury, and comes to this Court on appeal for a hearing de novo on the record as made in the Trial Court, with the presumption of the correctness of the findings of the Trial Judge as to the facts, unless the preponderance of the evidence is contrary thereto. T.C.A. sec. 27-303.

The Milan Exchange, Inc. is a Tennessee corporation primarily engaged in the business of printing and publishing a newspaper. On September 15, 1966 The Milan

Exchange, Inc. had issued and outstanding three hundred shares of its common stock, all of which was owned by the complainant Mrs. Mattie Pearce Haynie. By a Contract of Sale dated September 15, 1966, The Milan Exchange, Inc. and Mrs. Mattie Pearce Haynie contracted to sell to the defendants Bill Gardner and wife, Mary Lynn Gardner, all property, real and personal, of The Milan Exchange, Inc., except a 1965 Buick automobile, the cash in the bank, and accounts receivable as of close of business September 16, 1966.

The purchasers were to pay $10,000.00 cash to Mrs. Haynie, and execute individually and on behalf of the corporation a note of $20,000.00 payable in three equal annual installments of principal, plus 5% interest on the unpaid balance. This note was to be secured by a deed of trust on the realty and a security agreement on the personalty owned by the corporation. After the contract of sale was executed it was discovered title to the realty covered by the contract was not vested in the corporation, but was owned by Mrs. Haynie individually. Mrs. Haynie thereupon executed a warranty deed conveying the realty to The Milan Exchange, Inc. This deed is dated September 16, 1966. This contract of sale was consummated as above stated on September 19, 1966.

On December 10, 1966 The Courier-Chronicle, Inc., a Tennessee corporation engaged in the business of printing and publishing newspapers entered into an agreement with The Milan Exchange, Inc., to purchase fifty percent of the stock of the latter corporation. This contract is evidenced by a promissory note dated December 10, 1966, wherein the Courier-Chronicle, Inc. promised to pay to The Milan Exchange, Inc. the sum of $20,000.00 by printing the weekly newspaper published by The Milan

Exchange, Inc. without charge, the payee to credit the note each week based on invoices from the maker for printing done at rates specified in the note. This note was executed by J. Frank Warmath, President of the Courier-Chronicle, Inc.

In order to close the above sale of stock and as consideration therefor, J. Frank Warmath executed a guaranty agreement to the Gardners wherein he guaranteed to hold them harmless to the extent of one-half of the indebtedness evidenced by the $20,000.00 Haynie note.

On March 13, 1967 the defendants Gardner sold to J. Frank Warmath individually twenty-five percent of the stock of The Milan Exchange, Inc. for the sum of $10,-000.00 cash, and for the execution by J. Frank Warmath of an Agreement to Assume Indebtedness whereby that party did "assume all the personal and/or individual liability of Mrs. Mary Lynn Gardner and Bill Gardner * * *" by virtue of the $20,000.00 Haynie note.

The first payment of the $20,000.00 note was made by The Milan Exchange, Inc. in September, 1967. The makers defaulted on the second payment and Mrs. Haynie declared the balance due under the acceleration clause of the note. After demand for payment was refused this suit was instituted as herein stated.

▮ There is a distinction between a corporate transaction forbidden by statute and one that is ultra vires. Corporate transactions which are illegal because forbidden by statute are void, and cannot support an action nor become enforceable by performance, ratification, or estoppel. Baird v. McDaniel Printing Company (1941) 25 Tenn. App. 144, 153 S.W.2d 135, and authorities therein

cited. Whereas, transactions which are ultra vires the corporation may become enforceable by or against either party because of consent, acquiescence, ratification or estoppel chargeable to the party asserting the principle of an ultra vires transaction. McCampbell v. Fountain Head Railroad Co. (1903) 111 Tenn. 55, 77 S.W. 1070; State ex rel v. Holston Trust Company (1935) 168 Tenn 546, 554, 79 S.W.2d 1012; Tennessee Ice Company v. Raine (1901) 107 Tenn. 151, 158, 64 S.W. 29; 19 C.J.S. Corporations sec. 977a, p. 434.

■ The execution of the $20,000.00 note by The Milan Exchange, Inc. as an accommodation indorser, whereby Bill and Mary Lynn Gardner were able to purchase all the stock of that corporation, was in its strictest sense an act ultra vires the corporation. McCampbell v. Railroad, supra. However, the question remains as to whether the stockholders and officials of the corporation have so consented to and ratified the transactions that the corporation is now estopped to plead the transaction ultra vires the corporation.

■ Complainant argues The Milan Exchange, Inc. received the benefit of the transaction because of the lot conveyed to it by Mrs. Haynie after the contract of sale and before the transfer of the stock to the Gardners. We cannot agree with this argument because the contract of sale specifically included "the building" of The Milan Exchange, Inc., and the proof establishes the parties to that contract thought the corporation owned the realty. The deed by Mrs. Haynie to The Milan Exchange, Inc. conveying the real property only placed in the corporation the property the parties treated as belonging to it in the first place, and would not be a benefit to the corporation growing out of the ultra vires transaction.

We therefore conclude the rule as announced in Dillard & Coffin Company v. Richmond Cotton Oil Company, et al. (1918) 140 Tenn. 290, 204 S.W. 758, that where a corporation receives and retains the benefit of a transaction it cannot attack that transaction as ultra vires, does not apply to this case.

 We hold a corporation may execute its note for the personal indebtedness of its sole stockholder, and no one but the creditors of the corporation can complain. This principle was followed in Sargent v. Palace Cafe Co. (1917) 175 Cal. 737, 167 P. 146, wherein the Court stated the case as follows:

"It clearly appears from the testimony and the findings that Nicholas F. Sargent had been the owner of all of the stock of the Palace Cafe Company (a corporation), but that two shares were held respectively by Otto Kessler and J. E. Wadham solely to qualify them as directors. At the time of the transaction in question Nicholas F. Sargent and Otto Kessler entered into a contract whereby the former agreed to sell to the latter all of the stock of the corporation for $17,000. Ten thousand dollars of this sum was paid in cash, and the balance was evidenced by two promissory notes of the corporation, one for $3,000, which was subsequently paid, and one for $4,000 the note involved in this litigation. The sole consideration for the execution and delivery of said note was the sale of the stock of the corporation in part payment for which the note was given. While it is true that all of the directors and stockholders shared in the transaction whereby the notes were given, Sargent, who owned the stock before the transfer, and Kessler, who owned it afterwards, were both parties to the negotiation, and were the only real parties in interest, the Palace Cafe

Company being a 'one-man corporation.' The purchaser and seller of the business preferred to act through the corporation; no one was deceived; the bargain was partly consummated even to three payments of interest on the note here in litigation; and we find no proper excuse in the record for the attempt to interpose technical defenses to the payment of the note executed as a part of the purchase price.''

■ Where, as here, no question of public policy is concerned, and the rights of the state or of the public are not involved, and where no creditors are prejudiced, and all the stockholders have assented to or ratified the act there is no basis for the defense of ultra vires. To permit stockholders of a corporation to unanimously make an obligation, even though it be for accommodation, where the right of no other person is prejudiced, and afterwards allow that corporation to repudiate the action upon the ground it was beyond the power of the fictional body to do the act, could serve no useful purpose, and would be a device available in aid of fraud. For similar reasoning see: Perkins v. Trinity Realty Co. (1905) 69 N.J.Eq. 723, 61 A. 167, citing McCampbell v. Railroad, supra; Lincoln Realty Co. v. Kentucky Title Sav. Bank & Trust Co. (1916) 169 Ky. 840, 185 S.W. 156.

■■ The Milan Exchange, Inc. cannot maintain its defense of a transaction ultra vires the corporation on the ground its stockholders The Courier-Chronicle, Inc. and J. Frank Warmath are prejudiced because they were not stockholders at the time of the alleged irregular transaction. The record reveals these stockholders bought into the defendant corporation with full knowledge of the $20,000.00 note and the details of the entire transaction wherein Mrs. Haynie sold all the stock to the

Gardners. The Milan Exchange, Inc. made the first payment on the note at a time when these parties were stockholders in that corporation. That payment, and their knowledge of the transaction prior to their purchase of the stock, amounts to a ratification by these stockholders of the transaction in question. Those stockholders having ratified the act and the other stockholders, the Gardners, having consummated the transaction, no stockholder of The Milan Exchange, Inc. could object. If all the stockholders consent to and ratify the transaction they cannot through the corporate entity seek to have an objection raised which they themselves are estopped to assert. Whatever will estop all the stockholders will estop the corporation insofar as asserting ultra vires is concerned. For similar reasoning see: Olson v. Warroad Mercantile Co. (1917) 136 Minn. 310, 161 N.W. 713, and authorities therein cited.

We therefore conclude The Milan Exchange, Inc. cannot plead the transaction sued on ultra vires the corporation, and all assignments of error filed by that appellant are overruled.

J. Frank Warmath in his brief states the purpose of his appeal as follows: "The only question raised in this appeal is whether or not Tennessee procedure allows a defendant in an action for debt to bring in a third party who is joint debtor, or who is a guarantor, or who has assumed the same debt, and whether the Court can give a judgment over in the event that the original defendant is held liable for the debt."

■ In equity a cross-bill may be filed by a defendant, not only against the complainant, or against the complainant and one or more of the defendants, but it may

also bring in new parties when necessary for the complete determination of the matters involved in the original suit. Gibson's Suits in Chancery, 5th Ed., Vol. 1, sec. 771, p. 825, citing Pollard v. Wellford, 99 Tenn. 113, 120, 42 S.W. 23.

New parties defendant are permissible in equity proceedings if they are interested in the subject matter of the original suit or if all the matters grew out of the same thing. Johnson v. Aero Mayflower Transit Co. (1968) 221 Tenn. 219, 425 S.W.2d 757. Where it is necessary to do complete justice, all persons interested in the subject matter of the suit should be made parties to it either as complainants or defendants so there may be a decree that will bind them all. Ralph Rogers & Co. v. Allied Construction Co. (1959) 205 Tenn. 197, 326 S.W.2d 428.

A defendant may also bring in new parties in equity by an answer in the nature of a cross bill, the same as by cross bill proper. T.C.A. sec. 21-620.

It is therefore apparent a co-maker of a note sued in equity may by cross bill, or answer in the nature of a cross bill, make parties defendant thereto the original complainant and a new party who guaranteed to the co-maker the payment of the note, or who assumed the indebtedness of the co-maker. In cases of this nature the judgment of the Court would be in favor of the co-maker found liable over and against the cross-defendant.

It results all Assignments of Error of J. Frank Warmath are overruled.

The decree of the lower court is sustained and the cause is remanded to the Common Law and Equity Court

of Gibson County at Trenton, Tennessee, for enforcement of its decree herein. All cost in this Court is adjudged against The Milan Exchange, Inc. and J. Frank Warmath, cost of the lower court to remain as there adjudged.

Carney, P. J. (W. S.), and Puryear, J., concur.